# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR-18-53-M |
| | ) | |
| ADRIAN DAVID RAY GERDON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is defendant's Motion to Suppress, filed April 16, 2018. On April 25, 2018, the government filed its response. On April 30, 2018, the Court conducted an evidentiary hearing on defendant's motion to suppress. At the hearing, Officer Greg Van Brunt and Corporal Michael Myers of the Shawnee Police Department testified.[1]

I. Factual Background

On January 24, 2018, the Honorable Lori Puckett, District Judge for Cleveland County, Oklahoma, issued a search warrant for "a certain dwelling known as 15100 Coles Lane, in Newalla, Cleveland County, Oklahoma, the curtilage thereof and the appurtenances and vehicles thereto belonging." Search Warrant, attached as Exhibit 2 to defendant's Motion to Suppress. In the warrant, Judge Puckett found there was probable cause that Callie Deanna Roberts, a felony fugitive at the time, was being concealed on the property. *See id.* Law enforcement was also aware that defendant Adrian David Ray Gerdon ("Gerdon"), who had active felony warrants at the time and who was a convicted felon, was staying in a travel trailer on the property.

---

[1] The Court finds both Officer Van Brunt and Corporal Myers are credible witnesses.

On January 24, 2018, law enforcement executed the search warrant on the property. There were a number of teams of law enforcement that were executing the warrant. One team was assigned to Gerdon's trailer. As that team was entering the property, they were advised over the radio that a white male had been seen running south. This team went directly to Gerdon's trailer, and because the vehicle he was known to drive was parked by the trailer, the team believed Gerdon was inside the trailer. As they approached the trailer, the team saw that both doors to the trailer were open. When they were at the trailer, Officer Van Brunt announced that it was the police and that they had a search warrant. Officer Van Brunt, with another officer behind him, then entered the trailer through the first doorway.[2] As these officers were entering the trailer, Corporal Myers walked by the first doorway and went to the second doorway. As he was walking by, Corporal Myers saw a rifle inside the first doorway propped up against the doorway.

Shortly after Officer Van Brunt and the other officer entered the trailer, Officer Van Brunt heard a man call out "Whoa" from the back of the trailer. Corporal Myers saw Gerdon through the second doorway and told him he was under arrest. Gerdon did not put up any resistance, followed Corporal Myers' directions, exited the trailer, and was handcuffed. Officer Van Brunt was advised that Gerdon was in custody, and immediately, he and the other officer conducted a secondary sweep to look for any other people hiding in the trailer. During the secondary sweep, Officer Van Brunt saw a cushioned bench that appeared to also function as a storage area that Officer Van Brunt believed was large enough to hide a person. Officer Van Brunt moved the bench cushion and saw a pistol.[3]

---

[2] Based upon the testimony at the hearing, it appears that a red blanket was hanging over the doorway.
[3] Officer Van Brunt found the pistol less than 30 seconds after Gerdon was taken into custody.

Once the officers were satisfied that no other persons were in Gerdon's trailer, they secured the trailer and went to another travel trailer and cleared it. Less than ten minutes later, the officers went back to Gerdon's trailer and conducted a search of the trailer pursuant to the search warrant. During the search, the officers found thirty-nine .22 caliber bullets and nineteen 9mm bullets, two mobile phones, one methamphetamine pipe constructed from a prescription pill bottle with Gerdon's name on the label, one glass methamphetamine pipe, and one Zosi H 264 High Definition Digital Video Recorder. After searching the trailer, the officers searched Gerdon's vehicle. During the search, the officers found a handwritten index card, forty-nine .45 caliber bullets, a handwritten letter, a Wal-Mart receipt, a small disk, and three silver keys.

On March 7, 2018, the grand jury returned an Indictment charging Gerdon with being a felon in possession of a firearm. The firearms at issue in the Indictment are the rifle and the pistol found in Gerdon's trailer. Gerdon now moves this Court to suppress the firearms and any other evidence found during the search of his trailer and his vehicle.

## II. Discussion

### A. The rifle

> Under the plain view doctrine, police officers may properly seize evidence of a crime if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right to access to the object.

*United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004) (citation omitted). Further, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).

3

Having heard the evidence presented at the hearing, the Court finds that the rifle should not be suppressed because it was found in plain view during Gerdon's lawful arrest based upon his outstanding felony warrants. Specifically, the Court finds that the officers had reason to believe Gerdon was inside his trailer based upon the fact Gerdon's vehicle was parked outside and, thus, had a right to enter Gerdon's trailer to execute the arrest warrant. Additionally, the Court finds the rifle was in plain view to the officers who were executing the arrest warrant. Corporal Myers specifically testified that he saw the rifle propped up against the doorway as he was going to the second doorway. Further, as the officers were aware that Gerdon was a convicted felon, the Court finds that the rifle's incriminating character was immediately apparent. As such, the Court finds the officers were authorized to seize the rifle as contraband and evidence of a crime.

Accordingly, the Court finds that defendant's motion to suppress should be denied as to the rifle.

B.   The pistol

"The protective-sweep doctrine" provides "an exception to the Fourth Amendment's warrant requirement." *Fishbein v. City of Glenwood Springs, Colo.*, 469 F.3d 957, 961 (10th Cir. 2006). The United States Supreme Court has allowed protective sweeps in two situations. In the first situation, authorities can look in "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). In the second situation, authorities can look elsewhere in the house upon specific, articulable facts supporting a reasonable belief that someone dangerous remains in the house. *Id.* Further, if officers lack any information about whether someone remains inside a house, they do not have the specific, articulable facts required for a protective sweep beyond the adjacent areas. *See United States v. Nelson*, 868 F.3d 885, 889 (10th Cir. 2017).

Having heard the evidence presented at the hearing, the Court finds that based upon the protective-sweep doctrine, the pistol should not be suppressed. Specifically, the Court finds that because Gerdon was arrested in the back of his trailer and because the trailer was so small, the officers were authorized to search the closets and other spaces where an individual could be hiding in the trailer to ensure that no other person could immediately launch an attack. Further, the Court finds that the bench, that was searched and where the pistol was found, was within the area immediately adjoining the place of arrest and was large enough to hide a person. Additionally, the Court finds that based upon the advisement that a white male had been seen running south and that Ms. Roberts had not been located, the officers had a reasonable belief that someone dangerous could be in Gerdon's trailer.

Accordingly, the Court finds that defendant's motion to suppress should be denied as to the pistol.

### C. Other evidence

Additional evidence was found during the search of Gerdon's trailer and vehicle based upon the search warrant. It is undisputed that Gerdon's trailer was not the dwelling that was the subject of the search warrant. The government, however, contends that Gerdon's trailer fell within the curtilage of the dwelling.

> [C]urtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U.S. 294, 301 (1987).

Applying the above factors to Gerdon's trailer and vehicle, the Court finds that Gerdon's trailer and vehicle were not within the curtilage of the dwelling.[4]  First, the Court finds that the trailer and vehicle were some distance from the dwelling; Officer Van Brunt testified that they were approximately 100 feet from the dwelling.  Second, while the trailer and vehicle were within the barbed wire fence and the ditches that surrounded the dwelling; the fence and ditches surrounded the entire property and was not specific to the dwelling.  Third, the trailer was where Gerdon lived.  Other than the water hose and the power cords coming from the dwelling, there is no indication that Gerdon's trailer was part of the home life area of the dwelling.  Finally, while Gerdon's trailer and vehicle could be seen from the road, the doors to his trailer were facing away from the dwelling, which appears to have been done to provide some privacy.  Accordingly, the Court finds that because Gerdon's trailer and vehicle were outside the curtilage of the dwelling, the search warrant did not authorize them being searched.

The government further contends that even if the Court finds that Gerdon's trailer was not within the curtilage for purposes of the search warrant, the evidence should not be suppressed because the officers reasonably relied in good faith on the search warrant and believed that it covered Gerdon's trailer.  In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that evidence should not be suppressed where officers reasonably relied in good faith on a search warrant issued by a neutral and detached magistrate.  Having heard the evidence presented at the hearing, the Court finds that *Leon* would not apply in this case.  Both Officer Van Brunt and Corporal Myers testified that they had not read the search warrant or the affidavit in support of the search warrant but were simply relying on the information that they had been told by other law

---

[4] The Court would note that the curtilage question in this case is a very close question.

enforcement officers. Based upon this testimony, the Court finds that the officers did not reasonably rely in good faith on the search warrant.

Accordingly, the Court finds that defendant's motion to suppress should be granted as to the evidence found during the search of Gerdon's trailer and vehicle based upon the search warrant.

III. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Gerdon's Motion to Suppress [docket no. 20] as follows: the Court grants the motion as to the evidence found during the search of Gerdon's trailer and vehicle based upon the search warrant and denies the motion as to the rifle and the pistol.

**IT IS SO ORDERED this 2nd day of May, 2018.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE